FILED
2022 Sep-23  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

|                                          |      |                           |
|------------------------------------------|------|---------------------------|
| CORINTHIAN SPENCER,                      | )    |                           |
|                                          | )    |                           |
|     Plaintiff,       | )    |                           |
|                                          | )    |                           |
| v.                                       | )    |                           |
|                                          | )    | Case No. 7:20-cv-01236-SGC |
| SOCIAL SECURITY                          | )    |                           |
| ADMINISTRATION, Commissioner,            | )    |                           |
|                                          | )    |                           |
|     Defendant.       | )    |                           |

## MEMORANDUM OPINION[1]

The plaintiff, Corinthian Spencer, appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his applications for Child's Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Spencer timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review pursuant to 42 U.S.C §§ 405(g) and 1383(c)(3). For the reasons discussed below, the Commissioner's

---

[1] The parties have consented to the exercise of full dispositive jurisdiction by a magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 17).

[2] A claimant who is over the age of 18 when he files an application and has a disability that began before he reached the age of 22 is entitled to benefits as the child and dependent of an insured person who is entitled to old-age or disability benefits. 20 C.F.R. § 404.350(a). A child's claim for DIB is evaluated under the standards applicable to adults applying on their own wage records – that is, by the five-step sequential analysis discussed below. *Bowes v. Comm'r of Soc. Sec.*, 2018 WL 7020191, at *3 (M.D. Fla. Dec. 27, 2018), *report and recommendation adopted*, 2019 WL 175269 (M.D. Fla. Jan. 11, 2019); *Edwards v. Kijakazi*, 2022 WL 99984, at *3 (S.D. Ala. Jan.10, 2022).

decision is due to be reversed and remanded.

## I.     Procedural History

Spencer obtained a high school education with accommodations and has no prior relevant work experience.  (Tr. at 36, 159-65).[3]  In his applications for DIB and SSI, filed on September 25, 2018, Spencer alleged he became disabled on February 24, 2018, due to autism spectrum disorder.  (Tr. at 71-72, 76-77).  After his claims were denied, Spencer requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 29).  The ALJ held a hearing on October 2, 2019, and denied Spencer's claims on October 21, 2019.  (Tr. at 29-37, 43-69).  Spencer was 21 years old when the ALJ issued the decision.  (Tr. at 36-37).  After the Appeals Council denied review of the ALJ's decision (Tr. at 1-4), that decision became the final decision of the Commissioner, *see Fry v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)). Thereafter, Spencer commenced this action.  (Doc. 1).

## II.    Statutory and Regulatory Framework

To establish eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

---

[3] Citations to the record refer to the document and page numbers assigned by the court's CM/ECF electronic document system and appear in the following format: (Doc. __ at __).

or which has lasted or can be expected to last for a continuous period of not less than twelve months."   42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).   An applicant for DIB must demonstrate disability between his alleged initial onset date and his date last insured.  *Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 831 (11th Cir. 2011) (citing *Moore v. Barnhart*, 405 F.3d 1209, 1211 (11th Cir. 2005); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979)).   An applicant for SSI must demonstrate disability between the date of his application for SSI and the date of the ALJ's decision. *Moore*, 405 F.3d at 1211.  The Social Security Administration ("SSA") employs a five-step sequential analysis to determine an individual's eligibility for disability benefits.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity."  *Id.* at §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is engaged in substantial gainful activity, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(i) and (b), 416.920(a)(4)(i) and (b).  At the first step, the ALJ determined Spencer had not engaged in substantial gainful activity during the relevant period.  (Tr. at 32).

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is

3

expected to last for a continuous period of at least twelve months.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the claimant does not have a severe impairment or combination of impairments, the Commissioner will find the claimant is not disabled.  *Id.* at §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c).  At the second step, the ALJ determined that during the relevant period Spencer had the following severe impairment: autism spectrum disorder.  (Tr. at 32).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment or combination of impairments meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment or combination of impairments meets or equals one of the Listings, the Commissioner will find the claimant is disabled.   *Id.* at §§ 404.1520(a)(4)(iii) and (d), 416.920(a)(4)(iii) and (d).  At the third step, the ALJ determined that during the relevant period Spencer did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listings.  (Tr. at 32).

If the claimant's impairment or combination of impairments does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding further.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The ALJ determined that during the relevant period Spencer had the

RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations. (Tr. at 33).

Typically, at the fourth step the Commissioner compares an assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at §§ 404.1520(a)(4)(iv) and (e), 416.920(a)(4)(iv) and (e). Because Spencer has no past relevant work, the Commissioner simply proceeded to the fifth step.

At the fifth step, the Commissioner determines whether the claimant is capable of performing other work that exists in substantial numbers in the national economy in light of the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is capable of performing other work, the Commissioner will find the claimant is not disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1). If the claimant is not capable of performing other work, the Commissioner will find the claimant is disabled. *Id.* at §§ 404.1520(a)(4)(v) and (g)(1), 416.920(a)(4)(v) and (g)(1).

The ALJ here concluded that considering Spencer's age, education, work experience (or lack thereof), and RFC, there were jobs existing in significant numbers in the national economy, such as those of cleaner, garment folder, and cuff folder, that Spencer could perform during the relevant period. (Tr. at 36). Therefore,

the ALJ concluded Spencer was not disabled during the relevant period.  (Tr. at 37).

## III.    Standard of Review

Review of the Commissioner's decision is limited to a determination of whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).   A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citations omitted).   Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  It is "more than a scintilla, but less than a preponderance."  *Id.*  A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis*

*v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV.   Discussion

On appeal, Spencer argues (1) the ALJ improperly substituted his own lay opinion for that of the opinions offered by John R. Goff, Ph.D., and (2) the Appeals Council improperly excluded evidence Spencer submitted after the hearing. (Docs. 13, 21).

For DIB and SSI applications filed on or after March 27, 2017, new regulations for evaluating medical evidence apply. Relevant here, the new regulations alter how the SSA evaluates medical opinions and prior administrative medical findings. The old regulatory regime implemented a hierarchy of medical opinions and instructed an ALJ to assign an evidentiary weight to each medical opinion contained in the record by considering a laundry list of factors. *See* 20 C.F.R. §§ 404.1527(c), 404.927(c). The new regulatory regime disposes of the aforementioned hierarchy and instructs an ALJ to articulate the persuasiveness of a medical opinion or a prior administrative medical finding by explaining (1) the extent to which the source offers support for the opinion or finding and (2) the consistency of the opinion or finding with the record. *See id.* at §§ 404.1520c(a),

7

(b)(1) and (2), and (c)(1) and (2), 416.920c(a), (b)(1) and (2), and (c)(1) and (2).
"The more relevant the objective medical evidence and supporting explanations
presented by a medical source are to support his or her medical opinion(s) or prior
administrative medical finding(s), the more persuasive the medical opinion(s) or
prior administrative medical finding(s) will be." *See id.* at §§ 404.1520c(c)(1),
426.920c(c)(1). "The more consistent a medical opinion(s) or prior administrative
medical finding(s) is with the evidence from other medical sources and nonmedical
sources in the claim, the more persuasive the medical opinion(s) or prior
administrative medical finding(s) will be." *See id.* at §§ 404.1520c(c)(2),
416.920c(c)(2). The ALJ may, but is not required to, explain his consideration of
other factors. *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

Robert Estock, M.D., a state agency medical consultant, attempted to evaluate
Spencer's DIB and SSI claims on November 9, 2018. (Tr. at 73-74, 78-79). He
concluded Spencer's file contained insufficient evidence to make a determination
regarding disability and stated a consultative examination would be needed to
continue review of the claims. (Tr. at 73-74, 78-79).

However, the record does contain a consultative examination: a psychological
evaluation of Spencer performed by Dr. Goff on September 21, 2018, before Dr.
Estock attempted to evaluate Spencer's claims. (Tr. at 304-09). Although not
entirely clear, it appears Dr. Goff's evaluation may not have been provided to the

state agency until after Dr. Estock's review of the file (but before the ALJ issued his decision).  (*See* Tr. at 29, 44).

Dr. Goff's evaluation included the administration of five tests to Spencer: (1) the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), (2) the Reitan-Indiana Aphasia Screening Test, (3) informal clock drawing tasks, (4) the Wide Range Achievement Test – Fourth Edition ("WRAT-IV"), and (5) the restructured form of the Minnesota Multiphasic Personality Inventory – Second Edition (MMPI-2-RF).  (Tr. at 306).  Notably, while Spencer obtained a full scale IQ score within the average range of psychometric intelligence on administration on the WAIS-IV and word reading and spelling scores in line with his age and education on administration of the WRAT-IV, the math computation score he obtained in relation to the latter test placed him at the mid-sixth-grade level.  (Tr. at 306-07).  Dr. Goff noted the math computation score was a reflection of the characteristic difficulties persons with autism spectrum disorder have with mathematics and concluded Spencer's ambition to obtain an engineering degree and work as an engineer was unrealistic.  (Tr. at 307-08).  Dr. Goff further concluded Spencer demonstrates an array of other symptoms typically associated with autism spectrum disorder (e.g., deficits in social interactions, problems with communication, and social withdrawal) that impact his performance and ability to function socially.  (Tr. at 307-08).

The ALJ determined Dr. Goff's opinions were not persuasive because they

were inconsistent with (1) Spencer's testimony, (2) Spencer's Individualized Education Programs ("IEPs") of record, and (3) "other school records."  (Tr. at 35). The ALJ did not discuss the extent to which Dr. Goff offered support for his opinions.  Most notably, the ALJ did not discuss the results of psychometric testing Dr. Groff administered to Spencer.  Moreover, the ALJ's determination Dr. Goff's opinions are inconsistent with Spencer's testimony, Spencer's IEPs of record, and "other school records" is not supported by substantial evidence.

Spencer testified he hoped to obtain an engineering degree from Shelton State Community College, but at the time of the hearing, when he had been a student at Shelton State for two-and-a-half years, he had yet to complete an engineering course and was still working on basic courses.  (Tr. at 49).  He testified he received "terrible" grades in the first two math courses he took, did well in the third, and was "teetering" in the one he was taking presently.  (Tr. at 50).  Spencer further testified he was a "shut-in" and had no friends with whom he visited but that he talked on the telephone with his father and, once a month, with his grandparents.  (Tr. at 51-52). This testimony is consistent with Dr. Goff's opinions Spencer's vocational ambition is unrealistic and that he exhibits social deficits associated with autism spectrum disorder.  Spencer's ability to talk on the telephone with family members may demonstrate he is not entirely devoid of social skills, but it is not inconsistent with Dr. Goff's opinion Spencer has deficits that impair his social functioning,

particularly given the record does not shed light on the nature or length of Spencer's telephone conversations with family members, which regardless, are an attenuated type of social interaction.

The record contains Spencer IEPs for the 2010-2011, 2011-2012, and 2016-2017 school years. (Tr. at 211-30, 237-44).  The IEPs for the 2010-2011 and 2011-2012 school years, during which Spencer was in sixth and seventh grade, respectively, documented Spencer experienced social deficits (e.g., poor progress acquiring communication skills and difficulty working with peers) that impacted him in every academic area and received accommodations in the form of shortened assignments, extra time to complete assignments and tests, and grading only what he completed. (Tr. at 211, 222).  The IEP for the 2016-2017 school year, Spencer's senior year of high school, documented that during the prior school year Spencer received grades of "A" and "B" in most of his advanced classes, with the exception of a physics class that he simply was passing. (Tr. at 237).  In relation to social considerations, the IEP documented Spencer goes to church and was "very involved" in his high school's jazz band. (Tr. at 237).  It also documented he "does not mind" being placed in a group during class but rarely responds or discusses material in the group setting. (Tr. at 237).

The IEPs for Spencer's sixth and seventh grade years are fully consistent with Dr. Goff's opinions regarding Spencer's social limitations.  The note in the 2016-

2017 IEP that during the prior school year Spencer achieved good grades in unspecified advanced classes, presumably with accommodations, does not represent a meaningful inconsistency with Dr. Goff's opinion regarding Spencer's vocational ambition.  The fact that Spencer attends church is not necessarily inconsistent with Dr. Goff's opinion regarding Spencer's social functioning.  Spencer's church attendance could be like his school attendance insofar as he was physically present but had little, if any, meaningful social engagement.  Spencer's involvement in the high school jazz band likewise is not necessarily inconsistent with Dr. Goff's opinion regarding his social functioning.  There is no elaboration in the record regarding the nature of that involvement, and it is possible to participate in a band simply by playing an instrument on one's own, without engaging in any meaningful interaction with others.  Finally, whether Spencer "mind[ed]" being placed in a group during class, he rarely participated in that context, which would seem to be the relevant consideration when assessing social functioning.  Spencer's lack of participation in a group setting, as documented in his most recent IEP, is fully consistent with Dr. Groff's opinion regarding his social functioning.  The court is not clear to which "other school records" the ALJ refers.  Suffice it to say, the court has reviewed the record and not found other school records that are inconsistent with Dr. Goff's opinions.

Having disregarded Dr. Goff's opinions, the ALJ was left with insufficient

evidence to determine Spencer's mental limitations.  As stated, this was the conclusion reached by Dr. Estock, the state agency consultant, at the initial determination level, which the ALJ failed to acknowledge.  A claimant bears the burden of proving he is disabled, but it also is well settled an ALJ presiding over a Social Security disability hearing has a duty to develop a full and fair record.  *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).   This duty obligates an ALJ to order a consultative examination when, for example, the evidence is insufficient to make a determination regarding a claim.  *See* 20 C.F.R. §§ 404.1519a(b), 416.919a(b); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988).  Acquiring opinion evidence is particularly important where a claimant alleges disability based on a mental health disorder because "mental impairments are not susceptible to certain diagnostic tools used to evaluate physical impairments" and there is "difficulty in determining whether these individuals will be able to adapt to the demands or stress of the workplace."  *Telesco v. Comm'r of Soc. Sec.*, 577 F. Supp. 3d 336, 354 (S.D.N.Y. 2021) (internal quotation marks omitted), *report and recommendation adopted*, 2022 WL 719271 (S.D.N.Y. Mar. 10, 2022); *see also Barber v. Barnhart*, 459 F. Supp. 2d 1168, 1173 (N.D. Ala. 2006) ("In cases involving mental illness, the opinions of mental health professionals are especially important.").  Without a medical opinion from a treating or examining source or an administrative finding regarding Spencer's RFC from a state agency

13

consultant, the ALJ did not have a sufficient basis to determine Spencer's mental limitations. *See, e.g., Highfield v. Saul*, 2020 WL 5706120, at \*10-13 (S.D. Fla. Sept. 24, 2020) (holding that without (1) medical opinion from treating or examining physician to guide RFC determination for claimant with mental impairments (2) or assessment by state agency physicians, who found insufficient evidence to evaluate claim, ALJ improperly crafted his own limitations); *Luis Sanchez v. Berryhill*, 2018 WL 7351685, at \*9-10 (N.D. Fla. June 29, 2018) (same); *see also Brightmon v. Soc. Sec. Admin., Comm'r*, 743 F. App'x 347, 352-53 (11th Cir. 2018) (holding ALJ's RFC determination was not supported by substantial evidence where no expert, apart from consultative examiner whose opinion ALJ rejected, expressed opinion about claimant's ability to work despite his impairments after supplementation of record).

On remand, the ALJ should re-evaluate Dr. Goff's opinions, ensuring he discusses both the consistency and supportability factors. To the extent the ALJ still finds Dr. Goff's opinions unpersuasive and/or if the opinions do not address Spencer's functional limitations in full, the ALJ should order a consultative examination. On remand, the ALJ also should consider the additional evidence Spencer submitted after the hearing: (1) a transcript from Shelton State Community College dated November 22, 2019, and (2) additional opinions offered by Dr. Goff dated December 16, 2019, and January 13, 2020, in which Dr. Goff attempted to clarify his September 21, 2018 opinions. *See Ingram*, 496 F.3d at 1261 (noting

claimant generally may present new evidence at each stage of the administrative process); *see also* 20 C.F.R. §§ 404.900(b), 416.1400(b).  Given this case is due to be remanded to the ALJ for re-evaluation of Dr. Goff's September 21, 2018 opinions and, possibly, a consultative examination, the court declines to address the plaintiff's argument the Appeals Council erred in refusing to consider this additional evidence. The more logical and appropriate course would seem to be for the ALJ to consider the additional evidence in the course of re-evaluating Spencer's claims.

## V.    Conclusion

Having reviewed the administrative record and considered all the arguments presented by the parties, the court finds the Commissioner's decision is not in accordance with applicable law or supported by substantial evidence.  Therefore, the decision is due to be reversed and remanded for further consideration.  A separate order will be entered.

**DONE** this 23rd day of September, 2022.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE